UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                              Case No. 1-01-24227-dem

ASTON BAKER,                                                        Chapter 11

                                    Debtor.
-----------------------------------------------------------x
SIMON LIANI,

                                    Plaintiff,                      Adv. Proc. No.: 05-1556-dem

               -against-

ASTON BAKER and SHELDON GOOD &
COMPANY AUCTIONS NORTH EAST, LLC,
as Escrow Agent,

                                    Defendants.
-----------------------------------------------------------x

## DECISION AND ORDER ON MOTIONS AND
## CROSS-MOTION FOR SUMMARY JUDGMENT

Appearances:

Avrum J. Rosen, Esq.
Attorneys for Simon Liani
38 New Street
Huntington, New York 11743

Roy J. Lester, Esq.
Lester & Weitz, P.C.
Attorneys for Aston Baker
600 Old Country Road, Suite 229
Garden City, New York 11530

Heidi J. Sorvino, Esq.
Katten Muchin Rosenman LLP
Attorneys for Sheldon Good & Company Auctions, NorthEast LLC
575 Madison Avenue
New York, New York 10022-2585

DENNIS E. MILTON
United States Bankruptcy Judge

## INTRODUCTION

The matter is before the Court on the motions of the plaintiff and the cross-motions of the defendants for summary judgment. On December 12, 2005, Simon Liani ("Liani") brought this adversary proceeding against Aston Baker ("debtor") and Sheldon Good & Company Auctions North East, LLC as Escrow Agent ("Sheldon Good") ("defendants"). On October 12, 2007, Liani filed a Motion for Summary Judgment against the defendants. On October 19, 2007, the debtor filed a Cross-Motion for Summary Judgment against the plaintiff, and Sheldon Good filed a Motion for Summary Judgment against Liani and the debtor. This Court held hearings on these motions on October 30, 2007. Based upon the papers submitted and the arguments of counsel, the Court finds that the parties have established that no genuine issue of material fact exists and that an award of summary judgment is appropriate. The Court denies Liani's application for summary judgment. The Court grants the application of the debtor for summary judgment and denies the Cross-Motion of Sheldon Good.

## JURISDICTION

This Court has jurisdiction over this core proceeding under 28 U.S.C. §§1334(b) and 157(b)(2)(c) and the Eastern District of New York standing order of reference dated August 28, 1986. This Memorandum Decision and Order constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr. P. 7052.

## FACTUAL BACKGROUND

Familiarity with the prior proceedings in this case is assumed.  The facts relevant to this Application are as follows.  On November 15, 2001, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  On January 25, 2002, the case was converted to a case under Chapter 11 of the Bankruptcy Code.  On June 20, 2005, the Court approved an Order authorizing the retention of Sheldon Good as the exclusive auctioneer to sell four of the debtor's properties (the "Auctioneer Order").[1]  The Auctioneer Order approved the terms and conditions set forth in the Exclusive Real Estate Auction Agreement between Sheldon Good and the debtor (the "Auctioneer Agreement").  The debtor failed to execute the Auctioneer Agreement.

On September 27, 2005, Sheldon Good conducted a public auction and sold the debtor's property located at 490 New York Avenue, Brooklyn, New York (the "New York Avenue Property") to Liani.   The Purchase and Sale Agreement provided that the Purchaser agreed to purchase the Property "as is" and in its present condition subject to reasonable use, wear, tear, and natural deterioration...."  Purchase and Sale Agreement at ¶21.   In connection with the purchase and sale of the New York Avenue Property, Liani executed an affidavit in which he acknowledged

> THAT THE PROPERTY WILL BE SOLD "WHERE IS" IN AN "AS IS" CONDITION WITH NO WARRANTY, EXPRESS OR IMPLIED, ABOUT SUCH CONDITION (SELLER AND BROKER EXPRESSLY DISCLAIMING ANY WARRANTIES OF HABITABILITY, FITNESS FOR INTENDED USE OR OTHER IMPLIED WARRANTIES) AND WITH THE UNDERSIGNED ACCEPTING ALL DEFECTS, BOTH APPARENT AND LATENT, AT THE UNDERSIGNED'S

---

[1] The debtor's real properties were located at (i) 1980 Campbell Road, Wall Township, New Jersey; (ii) 490 New York Avenue, Brooklyn, New York; (iii) 2325 Foster Avenue, Brooklyn, New York; and (iv) 135 Old Northwest Road, East Hampton, New York (the "Properties").

> OWN, ABSOLUTE AND EXCLUSIVE RISK; (b) that
> neither Seller nor Auctioneer will have any liability or
> obligation whatsoever, for the physical condition of the
> Property, or for any inaccuracy in or omission from any
> of the written information and material about the Property...

See Exhibit E to Affidavit of Glen Hubbard dated October 18, 2007 (Upper Case in original).

As required under the Purchase and Sale Agreement, Liani gave Sheldon Good, as escrow agent, a deposit of $325,000.00.   According to the Purchase and Sale Agreement, Liani was required to tender a subsequent deposit payment of $212,500.00.  However, Liani defaulted on his obligation.   On October 27, 2005, this Court noted Liani's default and instructed debtor's counsel to provide notice of the default.  By letter dated October 28, 2005, debtor's counsel provided notice to Liani that he was in default.   In a letter dated October 31, 2005, Liani advised the debtor that he would not tender the additional down payment based upon the debtor's misrepresentations in connection with the sale.  Liani also demanded the return of his down payment in the amount of $325,000.00.

On November 29, 2005, the Court issued an Order approving the sale of the New York Avenue Property (the "New York Avenue Sale Order").   In that Order, the Court retained jurisdiction to implement and enforce the terms and provisions of the New York Avenue Sale Order, the Auctioneer Order and the Purchase and Sale Agreement for the New York Avenue Property.[2]

On December 22, 2005, Liani commenced this  adversary proceeding against the

---

[2]  The thirteenth decretal paragraph of the New York Avenue Sale Order provided in pertinent part:

"ORDERED, that the Court shall retain jurisdiction to implement and enforce the terms and provisions of the Auctioneer Order, the New York Avenue Sale Agreement and the New York Avenue Sale Order, including any disputes relating thereto or with respect to the Auction of the Properties."   Order dated November 29, 2005 at 5.

defendants.  In his complaint, Liani sought a judgment (1) declaring that plaintiff was not the

successful bidder of the New York Avenue Property (2) declaring the Purchase and Sale

Agreement for the New York Avenue Property invalid based on the alleged misrepresentations

of the defendants; and (3) directing the defendants to return the $325,000.00 down payment

made in connection with the Purchase and Sale Agreement for the New York Avenue Property.

On March 13, 2006, Sheldon Good filed a counter-claim against the plaintiff and a cross-claim

against the debtor.  On December 15, 2006, the Court issued an Order assigning the adversary

proceeding to mediation but the parties were unable to reach a consensual resolution.

On October 12, 2007, Liani filed a Motion for Summary Judgment against the

debtor and Sheldon Good.  On October 19, 2007, the debtor filed a Cross-Motion for Summary

Judgment against Liani and Sheldon Good filed a Motion for Summary Judgment against the

Plaintiff and the debtor.  In his motion, the debtor sought an order dismissing Liani's complaint

and an order denying codefendant Sheldon Good's cross claim for indemnification and attorneys

fees from the debtor.  In its motion, Sheldon Good sought an order dismissing Liani's complaint

against Sheldon Good and an order awarding Sheldon Good attorneys fees and expenses and

one-half of the earnest money deposit ($162,500.00).  On October 30, 2007, this Court held

hearings on these motions and took the matter under advisement.

## DISCUSSION

It is well settled that summary judgment will be awarded when there is no

genuine issue of material fact, and the prevailing party is entitled to judgment as a matter of law.

Celotex Corp. v. Catrett,  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Anderson v.

Liberty Lobby, Inc.,  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Pursuant to

Fed.R.Civ.P. 56(c), made applicable to these proceedings by Fed.R.Bank.P. 7056,  a moving party is entitled to summary judgment as a matter of law if  "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id.   A "material" fact is one "that might affect the outcome of the suit under governing law," and a "genuine" issue is one for which "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.

In the Second Circuit, the summary judgment standard is clear.  See Marvel Characters Inc. v. Simon, 310 F.3d 280, 285 (2d Cir. 2002).  The Second Circuit has stated that to determine whether a genuine issue of material facts exists "a Court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  Id. at 286.  In evaluating these motions, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,  475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 533 (1986).  The existence of a factual dispute alone is insufficient to defeat a motion for summary judgment; the non-moving party must offer probative evidence tending to support its position.  Anderson, 477 U.S. at 256.  Summary judgment may be entered against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp.,  477 U.S. at 321.

The Court has conducted a hearing and reviewed the documentary evidence

submitted by the parties.  In the present case, there are no genuine issues of material fact and summary judgment is appropriate.

## FINDINGS OF FACT

The Court finds that no genuine dispute exists as to the following material facts.

1.  Plaintiff, Simon Liani, is an individual who resides at 502 New York Avenue, PH 6A, Brooklyn, New York 11225.  Pl.'s Compl. at ¶ 7.

2.  Aston Baker, the debtor, is an individual who resided at the time of the commencement of the adversary proceeding at 1403 Ditmas Avenue, Brooklyn, New York 11226.  Pl.'s Compl. at ¶ 8.

3.  Sheldon Good is a fully owned subsidiary of a larger real estate auction company with a place of business at 18 East 41st Street, 16th Floor, New York, NY 10019.  Mem. of Law in Supp. Sheldon Good's Mot. for Summ. J. at p. 2.

4.  On June 20, 2005, the Court entered an order (the "Auctioneer Order") granting the debtor's application to employ Sheldon Good as its exclusive auctioneer in accordance with terms of the Auctioneer Agreement. [3]  Although the Court approved the Auctioneer Agreement, the parties did not execute it.  See Aff. of Jeffrey Hubbard, Sheldon Good's Executive Managing Director at ¶ 3 n. 1.  ("Hubbard Aff.")

---

[3]  The Auctioneer Agreement provides, *inter alia*, that

> IF EARNEST MONEY OR SIMILAR DEPOSITS MADE BY A PROSPECTIVE PURCHASER OR TENANT ARE FORFEITED, IN ADDITION TO ANY OTHER RIGHTS OF AUCTIONEER PURSUANT TO THIS AGREEMENT, AUCTIONEER AND SELLER SHALL DIVIDE THE MONIES EQUALLY PROVIDED, HOWEVER AUCTIONEER'S PORTION SHALL NOT EXCEED THE TOTAL ANTICIPATED COMMISSION.

Aston Baker's Cross-Mot. for Summ. J., Exhibit A, Auctioneer Agreement at p. 5.  (Upper Case in Original).

5.  The Auctioneer Order specifically addressed the commission and reimbursement of marketing expenses to be paid to Sheldon Good upon the sale of property. The Order made no mention of any compensation to Sheldon Good in the event of a forfeiture. The Order also provided that:

> [T]his Court hereby retains and reserves jurisdiction to determine, upon appropriate application therefore by Sheldon Good… any allowances and/or payments of compensation or reimbursement of distributions to Sheldon Good, relative to the rendition of the auctioneer services and the services described in the Application and the Auction Agreement, notwithstanding the terms and conditions of compensation set forth in the Application and the Auction Agreement…

6.  In connection with the sale of the New York Avenue Property, Sheldon Good prepared a Bidder's Information Packet ("Bidder's Packet").  Hubbard Aff., Exhibit B.  The Bidder's Packet was available to any interested party for $30.00.  Id. at ¶ 7.  The Bidder's Packet contained property information and information concerning the conduct of the auction. The Bidder's Packet contained the following language:

> The information included herein is believed to be correct, but it is not guaranteed.  No investigation or review has been made as to its accuracy; some information furnished is from outside sources deemed to be reliable, but it is not certified as accurate by the Seller, Broker or Auctioneer, or any of their affiliates.  All information contained herein is subject to corrections, errors and omissions. All offers must be based on the offeror's own investigation of any property offered herein and not on any representation made by the Seller, Broker Auctioneer or other party. Neither Seller nor Broker nor Auctioneer make any representation or warranty, express or implied, with respect to the property identified herein, and the property sold in an "AS-IS, WHERE-IS, WITH ALL FAULTS" condition except as specifically stated in the Purchase and Sale Agreement.
>
> All prospective buyers are specifically advised to refrain from reliance on the information provided herein as a basis for making a

-8-

> bid on the property.  Prospective purchasers are further encouraged to conduct a personal inspection of the property which they contemplate purchasing...

Id. at Exhibit B, Tab 1.  The Bidder's Packet provided for nine dates on which the property was available for inspection from 10 a.m. to 1 p.m. Id. at Exhibit B, Tab 2.  Under the dates listed, it stated that the property was being sold on an " 'as is, where is' " basis. Id.  Prospective buyers were invited to bring experts to inspect the property.  See id.

      7.  In the section entitled "Property Information," the Bidder's Packet provided that there was "underground parking for 17 cars and outdoor parking for an additional 15 vehicles."  Hubbard Aff. at Exhibit B, Tab 2.  This information is incorrect. Id. at ¶ 10.  The Bidder's Packet also includes a section entitled "Certificate of Occupancy."  The Certificate of Occupancy section provided that the property had a "fifteen (15) car garage and off-street parking space [for] eight (8) cars." Id. at Exhibit B, Tab 7.  This information is correct. Id. at ¶ 10.

      8.  The Bidder's Packet also included a Specimen Purchase and Sale Agreement. Among other things, the Specimen Purchase and Sale Agreement provided:

> [21]. CONDITION OF PROPERTY: Purchaser has inspected the buildings on the Property and the personal property included in this sale and is thoroughly acquainted with their physical condition and state of repair.  Purchaser agrees to purchase them "as is" and in their present condition subject to reasonable use, wear, tear, and natural deterioration between now and Closing. Purchaser shall have the right, after reasonable notice to Seller, to inspect on one occasion before Closing...
>
> [25.] NO REPRESENTATION: PURCHASER'S DUTY TO REVIEW: A. The Property and any Persona Property sold pursuant to this Agreement are sold in an "As-Is" condition. Purchaser acknowledges that Purchaser has not relied upon any architect's plans, sales plans, selling brochures, advertisements, representations,

warranties, statements or estimates or any nature whatsoever, whether written or oral, made by the Seller, the Seller's Broker or others, including, but not limited to, any relating to the description or physical condition or state of repair to the Property, the building, or the size of the dimensions of the building or property or the rooms therein contained or any other physical characteristics thereof, or any other data, except as may be specifically represented herein. Purchaser has relied on Purchaser's own examination and investigation thereof...

B. Any factual information such as Property dimensions, floor plans, square footage or sketches shown to Purchaser or set forth herein are or may be approximate and Purchaser represents to Seller that Purchaser has inspected and verified the facts and information prior to the execution of this Agreement. No liability for inaccuracies, errors or omissions is assumed by the Seller or its agents...

[36]. NO ORAL CHANGES: The Agreement cannot be changed or any provision waived orally. ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES...

[42]. DISCLOSURE INFORMATION - LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS: Annexed to this Agreement as "Exhibit D" is a Disclosure of Information and Acknowledgment of Lead-Based Paint and/or Lead-Based Paint Hazards. In addition, the Seller has provided herein any available records or reports pertaining to the presence of lead-based paint hazards. The Seller advises all prospective buyers that they are expected to waive the opportunity to conduct a risk assessment or inspection for the presence of lead-based pain and/or lead-based paint hazards or their bids or offers to purchase will not be considered. Incorporated herein is the pamphlet entitled *Protect Your Family From Lead In Your Home*...

Hubbard Affidavit, Exhibit B, Tab 6.

9. The Bidder's Packet also included a Specimen Bidder's Affidavit, which was required to be signed by any bidder at an auction. The Specimen Bidder's Affidavit provided:

[1]. The undersigned  has received and carefully reviewed and understood, prior to the execution hereof, copies of each of the

-10-

following items: (a) Terms and Conditions of Sale for Purchasing the Property at Auction; (b) Brochure describing the Auction; and (c) Bidder's Information Packet ('Bid Package') for the Property, which includes among other items, a copy of the real estate contract and its exhibits ("Agreement") for the Property...

[3].  The undersigned has independently inspected and reviewed the following conditions of the Property, including but not limited to, (a) title of Seller; (b) the condition and state of repair and/or lack of repair of all improvements thereon and has had the opportunity to obtain testing and reports; (c) the existence and condition of any and/or all personal property at the Property; and (d) the nature, provisions and effect of all health, fire, environmental, building, zoning, subdivision and all other use and occupancy laws, ordinances and regulations applicable thereto.

[4.]  The undersigned understands and agrees: (a) THAT THE PROPERTY WILL BE SOLD "WHERE IS" IN AN "AS IS" CONDITION WITH NO WARRANTY, EXPRESS OR IMPLIED, ABOUT SUCH CONDITION (SELLER AND BROKER EXPRESSLY DISCLAIMING ANY WARRANTIES OF HABITABILITY, FITNESS FOR INTENDED USE OR OTHER IMPLIED WARRANTIES) AND WITH THE UNDERSIGNED ACCEPTING ALL DEFECTS, BOTH APPARENT AND LATENT, AT THE UNDERSIGNED'S OWN, ABSOLUTE AND EXCLUSIVE RISK; (b) that neither Seller nor Auctioneer will have any liability or obligation whatsoever, for the physical condition of the Property, or for any inaccuracy in or omission from any of the written information and material about the Property...

Hubbard Aff., Exhibit B, Tab 8 (Upper Case in original).

10.  On July 20, 2005, the Plaintiff ordered the Bidder's Packet.  Hubbard Aff.,

Exhibit C, The Bidder's Information Packet Order Form.

11.  The Plaintiff received the Bidder's Packet approximately two weeks later.

Sheldon Good's Mot. For Summ. J., Exhibit F. Dep. Of Simon Liani at 48:20-25 ("Pl.'s Dep.").

Plaintiff stated that he did not review the information in the Bidder's Packet.  Id. at 92:22-24.

12.  Prior to the auction, plaintiff was familiar with the New York Avenue

-11-

Property. Plaintiff lives next door to the New York Avenue Property and has rented a parking

spot located on the New York Avenue Property.  <u>See</u> Pl.'s Dep. at 6:15-16 and 162:13-163:12.

13.  The Plaintiff failed to attend any of the open houses at the New York Avenue

Property prior to the auction.  <u>See</u> Pl.'s Dep. at 68:3-7.

14.  The Plaintiff failed to conduct an inspection of the property prior to the

auction.  <u>See</u> <u>id</u>. at 72:18-74-10.

15.  The Plaintiff did not request that Sheldon Good conduct a lead-based paint

inspection prior to the auction.  <u>See</u> <u>id</u>. at 143:25-144:15.

16.  On September 27, 2005, the New York Avenue Property was sold at public

auction. Aston Baker's Cross-Motion for Summ. J. at ¶ 11.

17.  Plaintiff attended the auction and signed an Open House Inspection

Registration Form, in which he acknowledged that he "has attended a scheduled Open House for

and has had the opportunity to inspect the Property."  Hubbard Aff., Exhibit D, Open House

Inspection Registration Form.  Plaintiff also executed a "Bidder's Affidavit" prior to the auction.

Hubbard Aff., Exhibit E, Bidder's Signed Affidavit.  The Bidder's Affidavit signed by the

plaintiff contains identical language to the Specimen Bidder's Affidavit.

18.  At the conclusion of the auction, plaintiff was the highest bidder for the New

York Avenue Property with a bid of $5,000,000.  Aston Baker's Cross-Motion for Summ. J. at ¶

11.  Plaintiff executed a Purchase and Sale Agreement with exhibits for a total purchaser price of

$5,375,000.  <u>Id</u>. at ¶ 15.  In connection with the Purchase and Sale Agreement plaintiff tendered

a check in the amount of $325,000 as a non-refundable initial deposit required under the

Purchase and Sale Agreement ("Initial Deposit").  Hubbard Aff., Exhibit H, Cashier's Check.

19.  The Purchase and Sale Agreement signed by the plaintiff on September 27, 2005 contains identical language to the Specimen Purchase and Sale Agreement previously provided to the plaintiff.

20.  Plaintiff signed the Purchase and Sale Agreement and initialed each exhibit. Hubbard Aff., Exhibit G.  Plaintiff initialed Exhibit D, "Disclosure of Information and Acknowledgment Lead-Based Paint and/or Lead-Based Paint Hazards," but did not place his initials alongside the specific waiver language in the Exhibit.  Id.  Plaintiff also initialed the pamphlet, "Protect Your Family From Lead In Your Home."  Id.  Plaintiff did not request to make an inspection of the New York Avenue Property for lead-based paint at the time of execution of the Purchase and Sale Agreement.  See id. at ¶ 22.  See also Pl.'s Dep. at 144:17-25.

21.  Under the Purchase and Sale Agreement, the Plaintiff was required to make an additional deposit in the amount of $212,500 (the "Additional Deposit") on or before 12:00 noon on the second business day following the date of the auction.  Hubbard Aff., Exhibit G. at ¶ 3-4.  Plaintiff failed to deliver this deposit.

22.  The Purchase and Sale Agreement signed by the plaintiff contains an "Events of Default" clause which provided:

> A. Relative to Events of Default, the Purchaser shall be in default under this agreement if any of the following occur: (I) Purchaser fails to pay the balance of the Purchase Price on or before the Closing Date set forth in this Agreement; (ii) The failure to pay, perform or observe any of Purchaser's obligations hereunder, including but not limited to, the Purchaser's failure to pay the Initial Deposit and Additional Deposit, if any, when due; time being of the essence with respect to the payment of any deposit when due hereunder...

> B. If any payment or any other covenant of Agreement hereof is not made, tendered or performed by either Seller or Purchaser, as herein

-13-

provided, then this Agreement, at the option of the party who is not in default, may be terminated by such party... In the event of such default by Purchaser, if Seller elects to treat this Agreement as terminated, then all payments made hereunder shall be forfeited to and retained by Seller as Seller's sole remedy as and for liquidated damages...

If the non-defaulting party elects to cancel, the defaulting party shall have seven (7) days from the giving of the cancellation notice within which defaulting party must cure the specified default. If the default is not cured within the aforementioned seven (7) days, the Agreement is automatically canceled. The Seller shall have the right to retain, as and for liquidated damages, the Total Deposit... it being agreed that the Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Total Deposit constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

Hubbard Aff., Exhibit G, Purchase and Sale Agreement at ¶ 24

23. By letter dated October 24, 2005, counsel for the plaintiff requested from counsel for the debtor the return of the Initial Deposit or a date and time for a lead paint inspection of the New York Avenue Property. Pl.'s Mot. for Summ. J., Exhibit E.

24. At a hearing held on October 27, 2005, plaintiff filed an Objection to the Order Approving the Auction and Sale of the debtor's Properties to the Successful Bidders, and noted his objections to the sale of the New York Avenue Property on the record.

25. Counsel for the debtor advised the plaintiff in a letter dated October 28, 2005, that he was in default under the Purchase and Sale Agreement for failing to deliver the Additional Deposit. Pl.'s Mot. for Summ. J., Exhibit F. The letter gave the plaintiff until October 31, 2005 to cure the default. See id.

26. By letter dated October 31, 2005, plaintiff advised that he would not be tendering the Additional Deposit and requested the return of the Initial Deposit in the amount of

$325,000.

27.  On October 31, 2005, the Court entered the Order Approving the Auction and Sale of the debtor's Properties to the Successful Bidders, except for the sale to the Successful Bidder of the New York Avenue Property.

28.  On November 29, 2005, the Court issued an order noting Liani's default and approving the subsequent sale of the New York Avenue Property by Sheldon Good.  The New York Avenue Property was sold for $4,250,000.

29.  Plaintiff brought this adversary proceeding on December 12, 2005 against Aston Baker and Sheldon Good as Escrow Agent.  Plaintiff sought (1) judgment declaring that Simon Liani was not a "Successful Bidder" and directing Sheldon Good to return the Initial Deposit to the Plaintiff; (2) judgement declaring that the Purchase and Sale Agreement is invalid based on alleged misrepresentations of the Defendants and directing Sheldon Good to return the Initial Deposit to the Plaintiff; and (3) judgment directing the Defendants to return the Initial Deposit to the Plaintiff.  See Pl.'s Compl. at p. 10.

30.  On February 14, 2006, the debtor filed an Answer to Plaintiff's Complaint. On March 13, 2006, Sheldon Good filed an Answer to Plaintiff's Complaint and made a Counterclaim against Plaintiff and a Cross-Complaint against the Defendant Aston Baker for one-half of the Initial Deposit money held by Sheldon Good.  See Sheldon Good's Answer and Counterclaim at p. 10.  On April 26, 2006, the debtor filed a Reply to Sheldon Good's Counterclaim and Cross-Claim.

**ARGUMENT**

Liani Has Failed to Meet His Burden of Proof and Has Failed to
Establish His Entitlement to Summary Judgment

Liani seeks an order directing entry of summary judgment (1) declaring that plaintiff was not the successful bidder of the New York Avenue Property; (2) declaring the Purchase and Sale Agreement for the New York Avenue Property invalid based on the alleged misrepresentations of the defendants; and (3) directing the defendants to return the $325,000.00 down payment made in connection with the Purchase and Sale Agreement for the New York Avenue Property. As shown below, the application lacks a factual basis. Liani was the successful bidder at the auction sale of the New York Property. The Sale of the New York Property was on an "as is, where is" basis and thus Liani's complaint about alleged misrepresentations of the defendants is unavailing. Since Liani has defaulted on the Purchase and Sale Agreement, he is not entitled to the return of his down payment of $325,000.000

A.   Liani Was the Successful Bidder at the Auction Sale of the
     New York Property.

Liani first claims that summary judgment is appropriate because he did not waive the opportunity to conduct a risk assessment for the premises or inspection for the presence of lead-based paint and/or lead based paint hazard. For this reason, Liani claims that he did not become a bidder and that under Paragraph 42 of the Purchase and Sale Agreement his offer to purchase should not have been considered. Liani's reliance upon this paragraph is misplaced. In advancing this argument, Liani ignores that the Purchase and Sale Agreement provided that the Purchaser agreed to purchase the Property "as is" and in its present condition subject to reasonable use, wear, tear, and natural deterioration...." Purchase and Sale Agreement at ¶21.

Liani's conduct belied his claim. Liani executed an affidavit which acknowledged that the Property was to be sold "'WHERE IS' IN AN 'AS IS' CONDITION WITH NO WARRANTY, EXPRESS OR IMPLIED, ABOUT SUCH CONDITION ...."   Hubbard Aff., Exhibit B, Tab 8 (Upper Case in original).  Liani purchased and received a Bidders Packet which provided that the Purchaser agreed to purchase the Property and the personal property included in the sale "'as is' and in their present condition...."  Bidder's Packet at ¶21.  Liani executed the Purchase and Sale Agreement.  Liani attended the auction in person, and gave Sheldon Good the deposit of $325,000.000.  From September 22 through September 27, Liani  failed to take any steps to withdraw from the auction or to obtain the return of his initial deposit of $325,000.00.

> B.      The New York Property was sold on an "as is, where is" basis.
> Liani's claim that the representations of the defendants have rendered
> the Purchase and Sale Agreement invalid lacks a legal and factual basis.

Liani next claimed that due to the debtor's misrepresentations in connection with the sale of the Property regarding the presence of lead-based paint and/or lead based paint hazard, he did not tender the additional down payment.  Liani further contended that these misrepresentations rendered the Purchase and Sale Agreement invalid and that he was therefore entitled to the return of his down payment of $325,000.00.

These claims are without merit. The Purchase and Sale Agreement expressly provided that the Purchaser had not relied upon any representation by the Seller:

> [25.] NO REPRESENTATION: PURCHASER'S DUTY TO REVIEW:
>
> A. The Property and any Persona Property sold pursuant to this Agreement
> are sold in an "As-Is" condition. Purchaser acknowledges that Purchaser
> has not relied upon any architect's plans, sales plans, selling brochures,
> advertisements, representations, warranties, statements or estimates or
> any nature whatsoever, whether written or oral, made by the Seller,
> the Seller's Broker or others, including, but not limited to, any

> relating to the description or physical condition or state of repair
> to the Property, the building, or the size of the dimensions of the
> building or property or the rooms therein contained or any other
> physical characteristics thereof, or any other data, except as
> may be specifically represented herein. Purchaser has relied
> on Purchaser's own examination and investigation thereof...

Purchase and Sale Agreement at ¶ 25.  In addition, Liani purchased and received the Bidders

Packet, which contained similar language:

> The information included herein is believed to be correct, but it is
> not guaranteed.  No investigation or review has been made as to its
> accuracy; some information furnished is from outside sources
> deemed to be reliable, but it is not certified as accurate by the Seller,
> Broker or Auctioneer, or any of their affiliates.  All information
> contained herein is subject to corrections, errors and omissions.
> All offers must be based on the offeror's own investigation of any
> property offered herein and not on any representation made by the
> Seller, Broker Auctioneer or other party. Neither Seller nor Broker
> nor Auctioneer make any representation or warranty, express or
> implied, with respect to the property identified herein, and the
> property sold in an "AS-IS, WHERE-IS, WITH ALL FAULTS"
> condition except as specifically stated in the Purchase and Sale
> Agreement.
>
> All prospective buyers are specifically advised to refrain from
> reliance on the information provided herein as a basis for making
> a bid on the property.  Prospective purchasers are further encouraged
> to conduct a personal inspection of the property which they
> contemplate purchasing...

 Hubbard Aff., Exhibit B , Tab 1.

> Liani also signed the Bidder's Affidavit, which set forth the nature of the sale and

absolved the Seller and Auctioneer from any liability:

> [4.]  The undersigned understands and agrees: (a) THAT THE
> PROPERTY WILL BE SOLD "WHERE IS" IN AN "AS IS"
> CONDITION WITH NO WARRANTY, EXPRESS OR IMPLIED,
> ABOUT SUCH CONDITION (SELLER AND BROKER EXPRESSLY
> DISCLAIMING ANY WARRANTIES OF HABITABILITY, FITNESS FOR
> INTENDED USE OR OTHER IMPLIED WARRANTIES) AND WITH THE

-18-

UNDERSIGNED ACCEPTING ALL DEFECTS, BOTH APPARENT AND LATENT, AT THE UNDERSIGNED'S OWN, ABSOLUTE AND EXCLUSIVE RISK; (b) that neither Seller nor Auctioneer will have any liability or obligation whatsoever, for the physical condition of the Property, or for any inaccuracy in or omission from any of the written information and material about the Property...

Hubbard Aff., Exhibit B, Tab 8 (Upper Case in original).

C.      Since Liani Has Defaulted under the Purchase and Sale Agreement,
He Is Not Entitled to the Return of His down Payment.

Finally, Liani seeks an Order directing the defendants to return the down payment of $325,000.00 made pursuant to the Purchase and Sale Agreement for the New York Avenue Property.  The basis for this claim is the alleged invalidation of the Purchase and Sale Agreement.  As noted above, Liani has failed to set forth any factual or legal basis for that result.  Since Liani is in default under a valid Purchase and Sale Agreement, he is not entitled to the return of his down payment.

D.  Sheldon Good Is Not Entitled to Payment of One Half
of Liani's down Payment.

In its Answer to the Complaint, Sheldon Good filed a Cross-Complaint against the debtor in which it sought one-half of the initial deposit money upon the court's determination that Liani had forfeited his deposit, and for expenses and attorneys fees as provided in the Auctioneer Agreement.  These claims are without merit and easily resolved.  With regard to its claim against the debtor for one half of the initial deposit money, Sheldon Good relied upon the following language in the Auctioneer Agreement:

IF EARNEST MONEY OR SIMILAR DEPOSITS MADE BY A PROSPECTIVE PURCHASER OR TENANT ARE FORFEITED, IN ADDITION TO ANY OTHER RIGHTS OF AUCTIONEER PURSUANT TO THIS AGREEMENT, AUCTIONEER AND SELLER SHALL DIVIDE THE

> MONIES EQUALLY PROVIDED, HOWEVER AUCTIONEER'S
> PORTION SHALL NOT EXCEED THE TOTAL ANTICIPATED
> COMMISSION.

Aston Baker's Cross-Mot. for Summ. J., Exhibit A, Auctioneer Agreement at p. 5. (Upper Case

in Original). The Court declines to enforce those terms of the Auctioneer Agreement for several

reasons. The Court finds that neither the debtor nor any authorized representative of Sheldon

Good signed the Auctioneer Agreement. None of the terms by which Sheldon Good alleged that

the debtor agreed to pay one-half of the forfeited deposit to Sheldon Good were specifically

disclosed to, or approved by, the Court. The Auctioneer Order approving the employment of

Sheldon Good provided that this Court retained jurisdiction to determine any allowances and/or

payments of compensation or reimbursement of expenses to Sheldon Good, upon appropriate

application by Sheldon Good in accordance with Sections 327 through 331 of the Bankruptcy

Code.    Under Section 330(a)(1) of the Bankruptcy Code, only "reasonable compensation for

actual, necessary services" rendered by Sheldon Good or "reimbursement for actual, necessary

expenses" may be sought from the estate. The sum of one-half of Liani's forfeited initial deposit

(approximately $162,500.00) does not represent either "reasonable compensation for actual,

necessary services" rendered by Sheldon Good or "reimbursement for actual, necessary

expenses[.]"    Indeed, it would appear, as to Sheldon Good, to consist of nothing short of an

unsupported windfall.[4]   The forfeited Liani Initial Deposit belongs to the debtor's estate, and

should be returned there.

        Sheldon Good also seeks indemnification from the debtor for legal fees of the law

firm of Arent Fox in representing Sheldon Good in this adversary proceeding pursuant to the

---

[4]   It appears that Sheldon Good has collected almost $800,000.00 in commissions pursuant to the Auctioneer Agreement.

Auctioneer Agreement. The Court denies this application for several reasons. The Bankruptcy Code requires court approval of the employment of the law firm of Arent Fox as counsel for Sheldon Good at the estate's expense. Sheldon Good has not sought such an Order. Such approval would have been unlikely, given the law firm's prior representation of one of the debtor's largest creditors, Gallster Capital. In addition, as counsel for the debtor noted, indemnity provisions are looked upon with disfavor in bankruptcy proceedings.

## CONCLUSION

As set forth more fully above, the Court finds that the parties have established that no genuine issue of material fact exists and that an award of summary judgment is appropriate. The Court denies Liani's application for summary judgment. The Court grants the application of the debtor for summary judgment and denies the Cross-Motion of Sheldon Good.

IT IS SO ORDERED.

Dated: Brooklyn, New York
     May 4, 2009

S/Dennis E. Milton<br>
DENNIS E. MILTON<br>
United States Bankruptcy Judge